# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

―――――――――――

UNITED STATES OF AMERICA,

     Plaintiff,

v.                                                     No. 09-CR-902 WJ

REYNALDO ROMERO-LEON,

     Defendant.

## MEMORANDUM OPINION AND ORDER IMPOSING SENTENCE UNDER THE ARMED CAREER CRIMINAL ACT

THIS MATTER came before the Court on the United States' Notice Seeking Imposition of Sentence Under the Armed Career Criminal Act, filed August 4, 2010 (Doc. 80). The Court held a sentencing hearing on March 4, 2011. The Court pronounced sentence at that hearing including the finding that Defendant was a career criminal and then orally sentenced Defendant to a low end guideline sentence of 210 months.[1] Before the Court entered the written Judgment and Commitment order, the Court sua sponte decided to reconsider the finding that Defendant was a career offender and ordered additional briefing (Doc. 98). Having reviewed the additional pleadings of the parties and having reconsidered the finding that Defendant is a career offender, the Court now finds that it correctly found that Defendant is a career offender. Accordingly, the Court shall proceed the enter the Judgment and Commitment reflecting the 210 month sentence the Court announced on March 4, 2011.

―――――――――――

[1] With the finding that Defendant is a career offender under the Armed Career Criminal Act, Defendant's guideline sentencing offense level is 32 and his criminal history category is VI, resulting in a guideline sentencing range of 210 to 262 months incarceration.

**BACKGROUND**

I.      **Factual Background**[2]

On March 11, 2009, Albuquerque Police Department ("APD") officers were dispatched

to a residence in Albuquerque, New Mexico at the request of the city housing services to

investigate complaints of drug sales and unauthorized individuals residing in Section Eight[3]

housing. The officers approached the residence and saw a woman hanging laundry in the

backyard. She was identified as Virgen Garcia, the listed resident and Romero-Leon's wife. The

officers notified her of the complaints and asked to enter the residence and speak with her about

the complaints. She advised that Romero-Leon was inside the residence, and entered the

residence with the officers following behind.

When the ADP officers entered the main room of the house behind Ms. Garcia, they saw

Romero-Leon lying on the couch with an 18-month-old baby on his chest. One APD officer

approached Romero-Leon on the couch. The officer perceived that Romero-Leon had a firearm

in his hand and was pointing it directly at the officer. The officer testified at the suppression

hearing that he did not take the first opportunity to shoot at the armed suspect due to his fear for

the infant's safety. Trans. of Suppression Hearing at 90:1-15 (Doc. 64). The officer feared for his

life and was concerned for the infant's life as well. *Id.* at 90:1-4, 19-22; 91:2-5. A fight between

the officer and Romero-Leon ensued for control of the firearm, and Ms. Garcia and the infant

---

[2] The factual background is based on the uncontested factual recitations in the Presentence Report ("PSR") except where otherwise indicated by a citation to the record.

[3] Section Eight (or the Housing Choice Voucher Program) is a federal housing program which provides rent subsidies to low-income renters and homeowners. As part of their agreement with the City of Albuquerque, Section Eight fund recipients cannot allow any unauthorized persons to live in their residence; those who violate the terms of their agreement risk losing their Section Eight rent subsidy.

were both in the way of the officer during this struggle. The officer ultimately gained control of the gun and arrested Romero-Leon, who struggled and kicked at the APD officers while being handcuffed. An 11-year-old girl, later identified as Rayna Romero-Leon, the defendant's daughter, was crying in the dining room. An additional individual named Juan Nunez was located in a bedroom and also handcuffed.

The firearm was identified as a Sig Sauer P226 pistol bearing serial number U399814. It was not loaded and did not have a magazine. A search of Romero-Leon revealed a 9 millimeter Sig Sauer magazine and 15 rounds of ammunition in his right front pocket. No evidence of drug use at the residence was found. Romero-Leon was arrested for Aggravated Assault on a Police Officer, Felon in Possession of a Firearm, and Child Abuse (Felonies). At the station, Romero-Leon admitted upon questioning that he knew he was a felon and not permitted to possess firearms. APD contacted Immigration and Customs Enforcement and was advised that Romero-Leon was an "ordered deported alien" who was not able to be deported due to the lack of diplomatic relations with Cuba.

A check of Romero-Leon's background revealed that he had been convicted of Trafficking (by Possession with Intent to Distribute) (Cocaine) (Felony) on June 28, 1999, and of the same offense again on March 19, 2002. Romero-Leon's first drug trafficking conviction stemmed from events occurring on three separate dates: March 28, 1996, June 29, 1996, and May 14, 1997. These offenses were consolidated into one plea agreement, and resulted in one conviction. The fourth offense, from May 4, 2001, was the only one charged in a separate criminal case.

II.      **Procedural Background**

After his motion to suppress was denied (Doc. 55), Romero-Leon pled guilty without a

formal plea agreement to violations of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), felon in possession,

and 18 U.S.C. §§ 922(g)(5)(A) and 924(a)(2), alien in possession. The Presentence Report

("PSR") calculated Romero-Leon's adjusted total offense level as 25 and his criminal history

category as IV, resulting in an advisory Sentencing Guidelines range under the United States

Sentencing Guidelines of 84 to 105 months. The government objected, asking that Romero-Leon

be sentenced under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), which

carries a mandatory minimum of 15 years (Doc. 80). Both the U.S. Probation Office

("Probation") and Romero-Leon maintained that the ACCA was not applicable. At the March 4,

2011 sentencing hearing, the Court stated on the record that the United States had established

that Romero-Leon met the requirements for the ACCA enhancement and thus, Romero-Leon had

to be sentenced under the ACCA. However, upon further review of the relevant legal authority,

the Court sua sponte issued an order noticing the parties of the possible reconsideration of that

position, and ordered further briefing. The United States continues to advocate for the imposition

of sentence under the ACCA, and Romero-Leon continues to object. Having reviewed the

supplemental briefing and relevant authorities, the Court will impose the 210 month guideline

sentence under the ACCA for the following reasons.

## DISCUSSION

The ACCA provides a mandatory minimum sentence for a defendant with three

qualifying convictions of a serious drug offense or violent felony when: (1) the convictions are

distinct from one another, and (2) each carries a maximum sentence under state law of ten years

or more. If the ACCA applies to a defendant, the fifteen-year minimum sentence is not

4

discretionary. *See United States v. Johnson*, 973 F.2d 857, 860 (10th Cir. 1992). Here, the United States argues that the ACCA applies because: (1) Romero-Leon's four prior convictions qualify as "serious drug offenses"; (2) the prior convictions, despite the fact that three of them were grouped in the same indictment, are distinct from one another; and (3) each conviction could have carried a maximum term of imprisonment of ten years or more under state law, because the basic term of imprisonment of nine years could have been increased under applicable recidivist provisions, the habitual career offender statute, or an aggravation enhancement.

### 1.    *"Serious Drug Offense"*

18 U.S.C. § 924(e) provides that any person violating § 922(g) who has at least three prior convictions for a violent felony or a serious drug offense shall be imprisoned for not less than 15 years. Under § 924(e)(2)(A), the term "serious drug offense" includes "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance." The Supreme Court has instructed courts to use a categorical approach, and look only at the statutory definitions of the prior offenses, not the underlying facts. *Taylor v. United States*, 495 U.S. 575, 600 (1990). Romero-Leon has been convicted twice under New Mexico law on four separate counts of trafficking cocaine by possession with intent to distribute. PSR ¶ 15. There is no dispute that the convictions qualify as "offense[s] under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance" as defined in § 924(e)(2)(A)(ii).

### 2.    *The Prior Convictions Are "Distinct"*

Section 924(e)(1) requires the offenses to have been "committed on occasions different from one another," which indicates that Congress intended the predicate offenses to be distinct in time. *United States v. Tisdale*, 921 F.2d 1095, 1098-99 (10th Cir. 1990). Romero-Leon's

convictions stem from events occurring on March 28, 1996, June 29, 1996, May 14, 1997, and

May 4, 2001. The first three of these offenses were consolidated into one plea agreement, and

resulted in one conviction on three counts. The fourth offense, from 2001, was charged in a

separate criminal case. Because they are distinct in time from one another, these four offenses

clearly meet the criteria of § 924(e)(1) and *Tisdale*. Whether the predicate offenses were

committed on "occasions different from one another" is a question of purely federal law.

*Johnson v. United States*, 130 S. Ct. 1265, 1269 (2010) ("The meaning of . . . § 924[] is a

question of federal law, not state law . . . ."). There is no support for Romero-Leon's contention

that this question should be answered with reference to state court interpretations of recidivist

provisions as applied to offenses that are grouped into one indictment. Rather, this question goes

to the next issue to be addressed: how state law defines the "maximum term of imprisonment"

for state crimes.

### 3.    *Maximum Sentence Under State Law*

Lastly, the ACCA requires that a "serious drug offense" carry a "maximum term of

imprisonment of ten years or more." 18 U.S.C. § 924(e)(2)(A)(ii). Romero-Leon's first

conviction carried a sentence of 9 years. N.M. Stat. Ann. §§ 30-31-20(B)(1), 31-18-15(A)(6).

The United States initially argued that recidivist enhancements under state law could have

increased the maximum term of imprisonment for Romero-Leon's prior drug offenses. Under

New Mexico law, each "second and subsequent offense[]" therefore carried a sentence of up to

18 years. *Id.* §§ 30-31-22(B)(2), 31-18-15(A)(3). The Supreme Court in *United States v.*

*Rodriquez* recently made it clear that where state recidivist statutes are applicable, the maximum

term of imprisonment under the ACCA is calculated with reference to those statutes. 553 U.S.

377 (2008). Alternatively, the United States argued that Romero-Leon's term of imprisonment

6

on his second conviction could have been elevated under state law by 1 year under the habitual offender enhancement, N.M. Stat. Ann. § 31-18-17(A), and by 4 and 8 years for his third and fourth convictions, *id.* § 31-18-17(B)-(C). Because Romero-Leon has four convictions for trafficking in controlled substances, the government argues that the last three of them subjected Romero-Leon to a maximum term of imprisonment of 10 years or more.

At the March 4 hearing, the Court imposed sentence under the ACCA after adopting the recidivist theory under *Rodriquez*, but sua sponte reconsidered that sentence (Doc. 98). In that reconsideration order, the Court explained that recidivist enhancements are not available under New Mexico law upon subsequent *offenses*, but are available only upon subsequent *convictions*. *See, e.g.*, *State v. Garcia*, 579 P.2d 790, 792 (N.M. 1978) ("The fact that the defendant was convicted in one criminal proceeding of two armed robberies charged under separate counts of one indictment is not sufficient to invoke the increased penalty provision of the statute."). The Court indicated it felt obliged to defer to this construction of the New Mexico recidivist statutes pursuant to the Supreme Court's recognition that "the 'maximum penalty prescribed by law' for a state offense necessarily depends on state law." *Rodriquez*, 553 U.S. at 387. Thus, only Romero-Leon's fourth drug conviction, which occurred subsequent to his conviction for the first three offenses, involved a sentence of more than ten years, and the Court concluded that Romero-Leon did not have three qualifying convictions under the ACCA.

In supplemental briefing, the United States offers a third avenue for applying the ACCA in this case: the aggravation or mitigation provisions under state law relating to the underlying drug offenses. The Court now finds that Romero-Leon's three convictions of drug trafficking in 1999 could have carried a sentence of more than 12 years under the aggravation enhancement. Under N.M. Stat. Ann. § 31-18-15.1, if there exist "aggravating circumstances surrounding the

7

offense or concerning the offender," the basic sentence as prescribed in section 31-18-15 may be altered in an amount to be determined by the judge, but by no greater than one-third. Thus, the maximum sentence to which Romero-Leon was exposed on his convictions under section 30-31-22 was 12 years (the basic sentence of 9 years plus one-third, or 3 years). The United States contends that Romero-Leon was noticed within the formal judgment of the possibility of aggravation and/or mitigation, and Romero-Leon does not dispute this contention.[4]

In *United States v. Hill*, the Tenth Circuit considered a very similar question: for purposes of the felon in possession statute, which prohibits the possession of firearms by a person who has been convicted of a crime punishable by a term of imprisonment exceeding one year, whether that term of imprisonment could be calculated with reference to aggravation enhancements under state law. 539 F.3d 1213, 1214 (10th Cir. 2008). *Hill* dealt with the question of whether an aggravation enhancement under Kansas law could be considered in calculating the "term of imprisonment" despite the fact that the Kansas sentencing court had not found that the defendant had committed a crime with any aggravating circumstances. *Id.* at 1218. The *Hill* court held that the enhancement could be considered because federal law was concerned with the *crime*, not the particular *defendant* at issue. In reaching this conclusion, *Hill* relied heavily on the U.S. Supreme Court's interpretation of the ACCA in *Rodriquez*. *Id.* at 1220-21. Thus, *Hill*'s

---

[4] Romero-Leon does argue that New Mexico law requires that the State notice the defendant of the particular circumstances giving rise to the aggravation enhancement before the enhancement can be sought. Romero-Leon was not noticed of the particular circumstances that could have given rise to a mitigation enhancement for purposes of his prior convictions.

This argument, however, confuses the issue of whether *this defendant* could have been sentenced to a maximum of 12 years with the issue of whether the *crime* of which he was convicted carried a maximum of 12 years. *United States v. Hill*, 539 F.3d 1213 (10th Cir. 2008), makes it clear that federal law looks at the statutory definition of the crime without regard to the circumstances of the particular defendant.

reasoning relies on the assumption that *Rodriquez*'s admonition to include recidivist statutes in construing the phrase "maximum term of imprisonment" in the ACCA should be read to also include aggravation enhancements.[5] Therefore, I find that *United States v. Hill* is controlling in the present case and that Romero-Leon's four prior drug convictions could each have carried a sentence of up to twelve years.

The parties dispute whether the aggravation enhancement can be used with regard to convictions from 1999 and 2001 in spite of the fact that the statute was declared constitutionally infirm under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), by the New Mexico Supreme Court in 2007. *See State v. Frawley*, 172 P.3d 144 (N.M. 2007) (invalidating the statute because it allowed a judge, rather than the jury, to find facts which increased the maximum applicable sentence). It is not clear, under federal law, whether a court is to apply current state law or state law as it existed at the time of the prior conviction.[6] Nonetheless, the issue is unnecessary to resolve in this case because *State v. Frawley* did not find that its holding retroactively invalidated the aggravation enhancement. 172 P.3d at 156-58. The statute in 1999 and 2001 was thus constitutional and could have been applied to any convictions for drug trafficking. The current version of the statute is also constitutional under *Apprendi*, as it gives the defendant the

---

[5] The United States District Court for the District of Kansas came to the same conclusion when it held that even actual innocence of any aggravating circumstances does not defeat the application of the ACCA. *United States v. Young*, No. 03-20116-01-KHV, 2008 WL 4758582, at *3 & n.5 (D. Kan. Oct. 27, 2008); *see also United States v. Pruitt*, 545 F.3d 416 (6th Cir. 2008) (citing Tenth Circuit precedent on the felon-in-possession statute to come to the same conclusion regarding "maximum term of imprisonment" under the ACCA).

[6] This question is currently before the U.S. Supreme Court. *See McNeill v. United States*, 131 S. Ct. 856 (Jan. 7, 2011) (mem.) (granting certiorari on the question of whether "a federal sentencing court [is required] to look to the maximum penalty prescribed by current state law for a drug offense at the time of the instant federal offense, regardless of whether the state has made that current sentencing law retroactive").

9

right to have a jury determine aggravating circumstances beyond a reasonable doubt. Therefore, both current state law and state law as it existed when Romero-Leon was convicted, in 1999 and 2001, define the "maximum term of imprisonment" for convictions under § 30-31-22 as 12 years.

## CONCLUSION

Defendant has four prior convictions for a "serious drug offense" which are distinct from one another, and carry a maximum sentence under state law of ten years or more. While the basic sentence for the crime of which Defendant was convicted was 9 years, all four of his drug trafficking convictions could have been enhanced by 3 years for aggravating circumstances. Therefore, Defendant is subject to the Armed Career Criminal Act's 15-year mandatory minimum.

On March 4, 2011, the Court conducted a sentencing hearing in which it considered the Government's objection to the Pre-Sentence Report that the initial guideline sentence calculated by Probation did not include the finding that Defendant was subject to the Armed Career Criminal Act's 15-year mandatory minimum. The Court also heard oral argument of counsel and heard the Defendant allocute. The Court orally found that Defendant's offense level was 32 and his criminal history category was VI, rendering a guideline sentencing range of 210 to 262 months. Now that the Court has reconsidered the Armed Career Criminal Act finding and determined that the finding was correctly made at the sentencing hearing of March 4, 2011, the Court shall proceed to enter the Judgment and Commitment order consistent with the oral pronouncements made on March 4, 2011.

**SO ORDERED.**

_____
UNITED STATES DISTRICT JUDGE

11